Richard A. Smith
Savannah Rose
SMITH & LOWNEY, PLLC
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

Attorneys for Puget Soundkeeper Alliance

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PUGET SOUNDKEEPER ALLIANCE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | COMPLAINT |
| v. ) | |
| ) | |
| PACIFIC PILE & MARINE LP, ) | |
| ) | |
| Defendant. ) | |
| ) | |
| _____ ) | |

## I.    INTRODUCTION

1.    This action is a citizen suit brought under Section 505 of the Clean Water Act ("CWA") as amended, 33 U.S.C. § 1365. Plaintiff Puget Soundkeeper Alliance seeks a declaratory judgment, injunctive relief, the imposition of civil penalties, and the award of costs, including attorneys' and expert witnesses' fees, for Defendant Pacific Pile & Marine LP ("PPM")'s repeated and ongoing violations of effluent standards and limitations under the CWA, as defined at 33 U.S.C. § 1365(f), particularly the terms and conditions of its National Pollutant Discharge Elimination System ("NPDES") permit authorizing certain stormwater discharges of pollutants from PPM's Seattle, Washington facility to navigable waters.

COMPLAINT - 1

2 of 41

## II.     JURISDICTION AND VENUE

2.      The Court has subject matter jurisdiction over Puget Soundkeeper Alliance's claims under Section 505(a) of the CWA, 33 U.S.C. § 1365(a). PPM is in violation of an "effluent standard or limitation" as defined by Section 505(f) of the CWA, 33 U.S.C. § 1365(f) and "an order issued by the Administrator" as defined by Section 505(a)(1)(B) of the CWA, 33 U.S.C. § 1365(a)(1)(B). The relief requested herein is authorized by Sections 309(d) and 505(a) and (d) of the CWA, 33 U.S.C. §§ 1319(d) and 1365(a) and (d).

3.      Under Section 505(b)(1)(A) of the CWA, 33 U.S.C. § 1365(b)(1)(A), Puget Soundkeeper Alliance notified PPM of its violations of the CWA and of Puget Soundkeeper Alliance's intent to sue under the CWA by letter dated and postmarked March 18, 2022 and delivered to PPM's registered agent on March 24, 2022 ("Notice Letter"). A copy of the Notice Letter is attached to this Complaint as Exhibit 1. The allegations in the Notice Letter are incorporated herein by this reference. In accordance with section 505(b)(1)(A) of the CWA, 33 U.S.C. § 1365(b)(1)(A) and 40 C.F.R. § 135.2(a)(1), Puget Soundkeeper Alliance notified the Administrator of the United States Environmental Protection Agency ("EPA"), the Administrator of EPA Region 10, and the Director of the Washington Department of Ecology ("Ecology") of its intent to sue PPM by mailing copies of the Notice Letter to these officials on March 18, 2022.

4.      At the time of filing this Complaint, more than sixty days have passed since the Notice Letter and copies thereof were served in the manner described in the preceding paragraph.

5.      The violations complained of in the Notice Letter are continuing or are reasonably likely to recur.

COMPLAINT - 2

SMITH & LOWNEY, PLLC
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

6.     At the time of the filing of this Complaint, neither the EPA nor Ecology has commenced any action constituting diligent prosecution to redress the violations alleged in the Notice Letter.

7.     The source of the violations complained of is located in King County within the Western District of Washington, and venue is therefore appropriate in the Western District of Washington pursuant to Section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1), and 28 U.S.C. § 1391(b).

### III.     PARTIES

8.     Puget Soundkeeper Alliance is suing on behalf of itself and its members.

9.     Puget Soundkeeper Alliance is a non-profit corporation organized under the laws of the State of Washington. Puget Soundkeeper Alliance is dedicated to protecting and preserving the environment of Washington State, especially the quality of its waters. Puget Soundkeeper Alliance is a membership organization and has at least one member who is injured by PPM's violations.

10.     Puget Soundkeeper Alliance has representational standing to bring this action. Puget Soundkeeper Alliance's members are reasonably concerned about the effects of discharges of pollutants, including stormwater from PPM's facility, on water quality and aquatic species and wildlife that Puget Soundkeeper Alliance's members observe, study, and enjoy. Puget Soundkeeper Alliance's members are further concerned about the effect of discharges from PPM's facility on human health. In addition, discharges from PPM's facility lessen Puget Soundkeeper Alliance's members' aesthetic enjoyment of nearby areas. Puget Soundkeeper Alliance's members' who live, work, fish, and recreate around or use the Duwamish Waterway and Puget Sound, and other waters affected by PPM's discharges. Puget Soundkeeper Alliance's

COMPLAINT - 3

members' concerns about the effects of PPM's discharges are aggravated by PPM's failure to record and report information about its discharges, violations, and pollution controls. The recreational, economic, aesthetic and/or health interests of Puget Soundkeeper Alliance and its members have been, are being, and will be adversely affected by PPM's violations of the CWA. The relief sought in this lawsuit can redress the injuries to these interests.

11.     Puget Soundkeeper Alliance has organizational standing to bring this action. Puget Soundkeeper Alliance has been actively engaged in a variety of educational and advocacy efforts to improve water quality and to address sources of water quality degradation in the waters of Western Washington, including the Duwamish Waterway and Puget Sound. As detailed herein and in the Notice Letter, PPM has failed to comply with numerous requirements of its NPDES Permit including benchmark limitations, effluent limits, sampling and monitoring, corrective actions, reporting and record keeping, Stormwater Pollution Prevention Plan ("SWPPP"), illicit and unpermitted discharges, and failed to comply with Administrative Order 16312. As a result, Puget Soundkeeper Alliance is deprived of information necessary to properly serve its members by providing information and taking appropriate action to advance its mission. Puget Soundkeeper Alliance's efforts to educate and advocate for greater environmental protection and to ensure the success of environmental restoration projects implemented for the benefit of its members are also obstructed. Finally, Puget Soundkeeper Alliance and the public are deprived of information that influences members of the public to become members of Puget Soundkeeper Alliance, thereby reducing Puget Soundkeeper Alliance's membership numbers. Thus, Puget Soundkeeper Alliance's organizational interests have been adversely affected by PPM's violations. These injuries are fairly traceable to PPM's violations and are redressable by the Court.

COMPLAINT - 4

12.     PPM is a partnership doing business under the laws of Washington State. Its property at issue is a storage and transloading facility for marine equipment and materials associated with construction activities located in Seattle, Washington that is authorized to conduct operations and discharge pollutants in the State of Washington.

13.     PPM's facility is located at or about 700 S Riverside Dr, Seattle, WA 98108 (the "facility").

## IV.     LEGAL BACKGROUND

14.     Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the discharge of pollutants by any person, unless in compliance with the provisions of the CWA. A discharge of a pollutant from a point source to waters of the United States without authorization by an NPDES permit, issued under Section 402 of the CWA, 33 U.S.C. § 1342, constitutes a violation of Section 301(a) of the CWA, 33 U.S.C. § 1311(a), and an "effluent standard or limitation" under Section 505(a)(1) and (f) of the CWA, 33 U.S.C. § 1365(a)(1) and (f). Conditions of NPDES permits are effluent standards or limitations under Section 505(a)(1) and (f) of the CWA, 33 U.S.C. § 1365(a)(1) and (f). Section 505(a)(1) of the CWA, 33 U.S.C. § 1365(a)(1), authorizes citizen suits against violators of effluent standards or limitations.

15.     Section 505(a)(1)(B) of the CWA, 33 U.S.C. § 1365(a)(1)(B) authorizes citizen suits against violators of orders issued by the Administrator of the NPDES permit.

16.     The state of Washington has established a federally approved state NPDES program administered by Ecology. Wash. Rev. Code § 90.48.260; Wash. Admin. Code ch. 173-220. This program was approved by the Administrator of the EPA pursuant to Section 402(b) of the CWA, 33 U.S.C. § 1342(b).

COMPLAINT - 5

17.     Under Section 402(a) of the CWA, 33 U.S.C. § 1342, Ecology first issued PPM coverage under the Industrial Stormwater General Permit NPDES number WAR301516 (the "Permit"), on January 2, 2014. PPM was granted coverage under the subsequent iteration of the Industrial Stormwater General Permit, under the same permit number WAR301516, on December 3, 2014, which became effective on January 2, 2015 and expired on December 31, 2019. PPM was again granted coverage under the subsequent iteration of the Industrial Stormwater General Permit, under the same permit number WAR301516, on November 20, 2019, which became effective on January 1, 2020 and expires on December 31, 2024. The Permit authorizes PPM to discharge stormwater to waters of the state, subject to certain terms and conditions.

18.     The Permit imposes certain terms and conditions on authorized dischargers, including discharge limits, monitoring requirements, corrective action requirements, and reporting and recordkeeping requirements. The Permit requires, among other things, that PPM properly operate and maintain all systems of treatment and control at all times.

## V.     FACTS

19.     On January 2, 2014, Ecology granted PPM coverage for the facility under the NPDES Industrial Stormwater General Permit number WAR301516.

20.     PPM discharges stormwater and pollutants to the Duwamish Waterway which then flows to Puget Sound.

21.     PPM does not own or operate a stormwater treatment system to manage stormwater at its facility. PPM discharges untreated stormwater into the Duwamish River.

22.     PPM has violated and continues to violate "effluent standards or limitations," as defined by Section 505(a)(1) and (f) of the CWA, 33 U.S.C. § 1365(a)(1) and (f), including

COMPLAINT - 6

conditions of the Permits. PPM's violations of the Permit are set forth in sections I through IX of the Notice Letter attached hereto as Exhibit 1 and are incorporated herein by this reference. In particular, and among the other violations described in the Notice letter, PPM has violated the Permit by discharging stormwater containing levels of pollutants greater than the benchmark limitations and effluent limits established in the Permit, failing to meet sampling and monitoring requirements, failing to meet reporting and record keeping requirements, failing to comply with corrective action requirements, failing to comply with SWPPP requirements, failing to comply with Administrative Order 16312, and failure to prevent illicit and unpermitted discharges.

23.     PPM discharges stormwater from its facility containing levels of pollutants that exceed the benchmark limitations established by the Permit, including the days on which PPM collected samples with the results identified in Tables 1-5 below, and is likely to continue discharging comparably unacceptable stormwater effluent:

**Table 1: Monitoring Point 001 Benchmark Exceedances**

| Quarter in which sample was collected | Turbidity (Benchmark: 25 NTU) | Copper (Benchmark: 14 µg/L) | Zinc (Benchmark: 117 µg/L) |
|---|---|---|---|
| First Quarter 2020 | 121 | 34.8 | 182 |
| Second Quarter 2020 | 56.7 | 47 | |
| Third Quarter 2020 | 50.4 | 29.8 | |
| Third Quarter 2021 | 71.5 | 22.8 | |
| Fourth Quarter 2021 | 91.1 | 21.6 | |
| First Quarter 2022 | 390 | 53.1 | 173 |

**Table 2: Monitoring Point 002 Benchmark Exceedances**

| Quarter in which sample was collected | Turbidity (Benchmark: 25 NTU) | Copper (Benchmark: 14 µg/L) | Zinc (Benchmark: 117 µg/L) |
|---|---|---|---|
| Second Quarter 2017 | | 128 | |
| Third Quarter 2017 | | 324 | |
| Fourth Quarter 2017 | 30 | 170.25 | |
| First Quarter 2018 | | 55.2 | |
| Second Quarter 2018 | 29 | 38 | |
| Fourth Quarter 2018 | 62 | 245 | |

COMPLAINT - 7

| First Quarter 2019 | | 37.8 | |
|---|---|---|---|
| Second Quarter 2019 | | 32.1 | |
| Third Quarter 2019 | 26.2 | 100 | |
| Fourth Quarter 2019 | | 43.1 | |
| First Quarter 2020 | | 19.4 | |
| Second Quarter 2020 | 26.8 | 33.8 | |
| Third Quarter 2020 | 366.5 | 96.55 | |
| Fourth Quarter 2020 | 52.3 | | |
| First Quarter 2021 | 96 | 77.9 | 166 |
| Second Quarter 2021 | 29 | 14.4 | |
| Third Quarter 2021 | 126 | 24.4 | |
| Fourth Quarter 2021 | 785 | 90.1 | 171 |
| First Quarter 2022 | 800 | 230 | 745 |

**Table 3: Monitoring Point 003 Benchmark Exceedances**

| Quarter in which sample was collected | Turbidity (Benchmark: 25 NTU) | Copper (Benchmark: 14 µg/L) | Zinc (Benchmark: 117 µg/L) |
|---|---|---|---|
| Second Quarter 2017 | | 157 | 1240 |
| Third Quarter 2017 | 52 | 19.1 | 319 |
| Fourth Quarter 2017 | | 52.3 | |
| First Quarter 2018 | 92 | 563 | 483 |
| Second Quarter 2018 | 41 | 269 | 217 |
| Fourth Quarter 2018 | | 30.7 | |
| Fourth Quarter 2019 | | 202 | 206 |
| First Quarter 2020 | | 154 | 183 |
| Second Quarter 2020 | | 299 | 194 |
| Third Quarter 2020 | | 217 | 289 |
| Fourth Quarter 2020 | | 22.1 | 147 |
| First Quarter 2021 | 211 | 54.2 | |
| Third Quarter 2021 | | 18.2 | |
| Fourth Quarter 2021 | | | 149 |
| First Quarter 2022 | 27.5 | 157 | 150 |

**Table 4: Monitoring Point 004 Benchmark Exceedances**

| Quarter in which sample was collected | Turbidity (Benchmark: 25 NTU) | Copper (Benchmark: 14 µg/L) | Zinc (Benchmark: 117 µg/L) |
|---|---|---|---|
| Fourth Quarter 2017 | | 15.3 | |
| First Quarter 2018 | 39 | 238 | 161 |
| Second Quarter 2018 | 92 | | |
| Fourth Quarter 2018 | 497 | 225 | 807 |
| Second Quarter 2019 | 45 | 46.5 | |
| Third Quarter 2019 | 439 | 32.2 | 452 |

COMPLAINT - 8

| Fourth Quarter 2019 | 544 | 326 | 1240 |
|---|---|---|---|
| First Quarter 2020 | 650 | 237 | 674 |
| Second Quarter 2020 | 86.5 | 1270 | |
| Third Quarter 2020 | 223.15 | 35.95 | |
| Fourth Quarter 2020 | 51.4 | | |
| Second Quarter 2021 | 266 | 61.4 | 177 |
| Third Quarter 2021 | 45.1 | 31.9 | |
| Fourth Quarter 2021 | 759 | 136 | 294 |
| First Quarter 2022 | 110 | 30.8 | 119 |

**Table 5: Monitoring Point 005 Benchmark Exceedances**

| Quarter in which sample was collected | Turbidity (Benchmark: 25 NTU) | Copper (Benchmark: 14 µg/L) |
|---|---|---|
| Fourth Quarter 2019 | 34 | 15.3 |

24.     PPM discharges stormwater from its facility containing levels of pollutants that violate the total suspended solids effluent limitation of 30 mg/L established by the Permit, including the days on which PPM collected samples with the results identified in the paragraph below, and is likely to continue violating this limitation:

| **Date of Violation** | **Reported Total Suspended Solids Value in mg/L (Effluent Limit 30 mg/L)** | **Monitoring Point** |
|---|---|---|
| June 15, 2017 | 166 | 003 |
| April 10, 2018 | 138 | 004 |
| October 5, 2018 | 1350 | 004 |
| April 18, 2019 | 66 | 004 |
| November 18, 2019 | 370 | 004 |
| January 10, 2020 | 532 | 004 |
| January 10, 2020 | 67 | 001 |
| May 30, 2020 | 51 | 001 |
| May 30, 2020 | 138 | 004 |
| September 25, 2020 | 98 | 002 |
| November 16, 2020 | 34 | 004 |
| January 11, 2021 | 226 | 002 |
| January 11, 2021 | 634 | 003 |
| May 27, 2021 | 335 | 004 |
| September 27, 2021 | 38 | 002 |
| September 27, 2021 | 34 | 004 |
| October 26, 2021 | 82 | 002 |

COMPLAINT - 9

| October 26, 2021 | 136 | 004 |
| February 28, 2022 | 140 | 001 |
| February 28, 2022 | 990 | 002 |
| February 28, 2022 | 47 | 004 |
| May 2, 2022 | 194 | 002 |
| May 2, 2022 | 62 | 004 |
| May 2, 2022 | 31 | 001 |

25.     The stormwater monitoring data provided in in Tables 1-5 and paragraph 23 shows benchmark exceedances and effluent limitations included in the stormwater monitoring results that PPM submitted to Ecology.

26.     Condition S4.B.1.d of the Permits requires PPM's monitoring to be representative of discharges from the facility. The stormwater monitoring results that PPM routinely submits to Ecology are not representative of the facility's stormwater discharges.

27.     PPM's stormwater discharges are causing or contributing to violations of water quality standards and therefore violate Condition S5 and S6 the Permits. Discharges from PPM's facility contribute to the polluted conditions of the waters of the state, including the water quality standards of the Duwamish River and Puget Sound. Discharges from PPM's facility contribute to the ecological impacts that result from the pollution of these waters and to Puget Soundkeeper Alliance and its members' injuries resulting therefrom. These requirements and PPM's violations thereof are described in detail in section I.A and II of the Notice Letter, attached hereto as Exhibit 1, and incorporated herein by this reference.

28.     PPM's exceedances of the benchmark values and effluent limits indicate that PPM is failing to apply AKART to its discharges and/or is failing to implement an adequate SWPPP and BMPs. PPM violated and continues to violate Condition S3 of the Permits by not developing, modifying, and/or implementing BMPs in accordance with the requirements of the Permits, and/or by not applying AKART to discharges from the facility. These requirements and

COMPLAINT - 10

PPM's violations thereof are described in detail in section I.B and section III of the Notice Letter, attached as Exhibit 1, and incorporated herein by this reference.

29.     Condition S4.B.2.c of the 2015 Permit and S4.B.3.a of the 2020 Permit require PPM to collect stormwater samples at each distinct point of discharge offsite except for substantially identical outfalls. PPM has multiple distinct points of discharge where stormwater is leaving the facility that PPM is not sampling and analyzing appropriately. There are other points of stormwater discharge from the facility and PPM is in violation of Condition S4 of the Permits by failing to collect and analyze samples from them during every quarter for the last five years. These violations will continue until PPM commences proper monitoring all distinct points of discharge. PPM failed to collect stormwater samples for all parameters for Monitoring Point 002 during the first quarter 2017, and third quarter 2018; Monitoring Point 003 during the first quarter 2017, third quarter 2018, and first quarter 2019; Monitoring Point 004 during first quarter 2017, third quarter 2017, third quarter 2018, and first quarter 2019.

30.     PPM has violated Condition S9.A of the 2015 Permit and Condition S9.B of the 2020 Permit by failing to correctly and timely submit Discharge Monitoring Reports ("DMR") to Ecology. PPM has violated these conditions by failing to submit a DMR within the time prescribed for the first quarter 2017, first quarter 2018, fourth quarter 2019, and second quarter 2020.

31.     PPM has violated Condition S7.A and S7.B of the Permits by failing to conduct monthly visual inspection reports, by qualified personnel, each and every month since PPM was granted coverage under the Permits. Additionally, PPM violated Condition S7.C of the Permits by failing to prepare and maintain the requisite inspection reports or checklists and failed to make the requisite certifications and summaries. These visual monitoring and inspection

COMPLAINT - 11

requirements and PPM's violations thereof are described in section IV.C of the Notice Letter, attached hereto as <u>Exhibit 1</u>, and incorporated herein by this reference.

32.     PPM has not conducted or completed the Level One Corrective Action responses as required by the Permits. These requirements of the Permits and PPM's violations thereof are described in section V.A of the Notice Letter, attached hereto as <u>Exhibit 1</u>, and incorporated herein by this reference.

33.     Condition S8.B of the Permits require a permittee to undertake a Level One Corrective Action whenever it exceeds a benchmark value identified in Condition S5.A and Table 2 of the Permits. A Level One Corrective Action comprises of conducting an inspection to investigate the cause, review of the SWPPP to ensure permit compliance, revisions to the SWPPP to include additional operational source control BMPs with the goal of achieving the applicable benchmark values in future discharges, signature and certification of the revised SWPPP, summary of the Level One Corrective Action in the Annual Report, and full implementation of the revised SWPPP as soon as possible, but no later than the DMR due date for the quarter the benchmark was exceeded. Condition S8.A of the 2020 Permit requires that the permittee implement any Level One Corrective Action required by the 2015 Permit.

34.     PPM triggered Level One Corrective Action requirements for each benchmark exceedance identified in Tables 1-5 above. PPM's failures to comply with the Level One Corrective Action requirements include the failure to perform the required review, revision, and certification of the SWPPP; perform required implementation of additional BMPs; and complete the required summarization in the Annual Report each and every time since PPM was granted coverage under the Permits, its quarterly stormwater sampling results were greater than a benchmark or outside the benchmark range, including the benchmark exceedances listed in

Smith & Lowney, PLLC
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

Tables 1-5 above. These corrective action requirements and PPM's violations thereof are described in section V.A of the Notice Letter, attached hereto as <u>Exhibit 1</u>, and are incorporated herein by this reference.

35.     PPM has not conducted and/or completed the Level Two Corrective Action responses as required by the Permits. These requirements of the Permits and PPM's violations thereof are described in section V.B of the Notice Letter, attached hereto as <u>Exhibit 1</u>, and incorporated herein by this reference.

36.     Condition S8.C of the Permits require a permittee to undertake a Level Two Corrective Action whenever it exceeds a benchmark value identified in Condition S5.A and Table 2 of the Permits during any two quarters during a calendar year. A Level Two Corrective Action comprises review of the SWPPP to ensure permit compliance, revisions to the SWPPP to include additional structural source control BMPs with the goal of achieving the applicable benchmark values in future discharges, signature and certification of the revised SWPPP, summary of the Level Two Corrective Action in the Annual Report, and full implementation of the revised SWPPP as soon as possible, but no later than August 31 of the year following the triggering of the Level Two Corrective Action. Condition S8.A of the 2020 Permit requires that the permittee implement any Level Two Corrective Action required by the 2015 Permit.

37.     PPM triggered Level Two Corrective Action requirements for each benchmark exceedance identified in Tables 1-5 above that occurred in any two quarters of a calendar year. PPM has violated the requirements of the Permits described above by failing to conduct a Level Two Corrective Action for discharge from its facility in accordance with Permits' conditions, including the required review, revision and certification of the SWPPP by the August 31 deadline; the required implementation of additional BMPs, including additional structural source

COMPLAINT - 13

control BMPs by the August 31 deadline; and the required summarization in the Annual Report each time since PPM was granted coverage under the Permits, quarterly stormwater sampling results from the facility were greater than a benchmark or outside the benchmark range for any two quarters during a calendar year, including the benchmark exceedances listed in Tables 1-5 above. These violations include PPM's failure to perform a Level Two Corrective Action for zinc in third quarter 2017, copper in third quarter 2017, turbidity in fourth quarter 2017, turbidity in second quarter 2018, copper in second quarter 2018, zinc in second quarter 2018, copper in second quarter 2019, turbidity in third quarter 2019, zinc in fourth quarter 2019, turbidity in second quarter 2020, copper in second quarter 2020, zinc in second quarter 2020, turbidity in second quarter 2021, copper in second quarter 2021, and zinc in second quarter 2021, as identified in Tables 1-5. These corrective action requirements and PPM's violations thereof are described in section V.B of the Notice Letter, attached hereto as Exhibit 1, and are incorporated herein by this reference.

38.     Condition S8.D of the Permits require a permittee to undertake a Level Three Corrective Action whenever it exceeds a benchmark value identified in Condition S5.A and Table 2 of the Permits during any three quarters during a calendar year. A Level Three Corrective Action comprises review of the SWPPP to ensure permit compliance, revisions to the SWPPP to include additional treatment BMPs and operational and/or structural source control BMPs if necessary, with the goal of achieving the applicable benchmark values in future discharges, signature and certification of the revised SWPPP, summary of the Level Three Corrective Action in the Annual Report, and full implementation of the revised SWPPP as soon as possible, but no later than September 30 of the year following the triggering of the Level Three Corrective Action. Condition S8.D also requires that before implementation of any BMPs

COMPLAINT - 14

that require site-specific design or sizing of structures, equipment, or processes, that the permittee submit an engineering report, plans, and specifications, and an Operation and Maintenance Manual to Ecology for review, which must be submitted no later than May 15 prior to the Level Three Corrective Action deadline. Condition S8.A of the 2020 Permit requires that the permittee implement any Level Three Corrective Action required by the 2015 Permit.

39.     PPM triggered Level Three Corrective Action requirements for each benchmark exceedance identified in Tables 1-5 above that occurred in any three quarters of a calendar year. PPM has violated the requirements of the Permits described above by failing to conduct a Level Three Corrective Action in accordance with Permit conditions, including the required review, revision, and certification of the SWPPP by the September 30 deadline; the required implementation of additional BMPs by the September 30 deadline; the required submission of an engineering report and Operation and Maintenance Manual by the May 15 deadline; and the required summarization in the Annual Report, each time that its quarterly stormwater sampling results were greater than a benchmark for any three quarters during a calendar year, including the benchmark excursions listed in Tables 1-5 above. These violations include PPM's failure to perform a Level Three Corrective Action for copper triggered in fourth quarter 2017, turbidity triggered in fourth quarter 2018, copper triggered in fourth quarter 2018, zinc triggered in fourth quarter 2018, copper triggered in third quarter 2019, turbidity triggered in fourth quarter 2019, turbidity triggered in third quarter 2020, copper triggered in third quarter 2020, zinc triggered in third quarter 2020, turbidity triggered in third quarter 2021, and copper triggered in third quarter 2021, as indicated by Tables 1-5. These corrective action requirements and PPM's violations thereof are described in section V.C of the Notice Letter, attached hereto as Exhibit 1, and are incorporated herein by this reference.

COMPLAINT - 15

40.     PPM failed and continues to fail to comply with recording and record keeping requirements of the Permits outlined in Condition S4.B of the Permits and Condition S9.C of the 2015 Permit and S9.D of the 2020 Permit. These requirements and PPM's violations thereof are described in section VI of the Notice Letter, attached hereto as Exhibit 1, and are incorporated herein by this reference.

41.     PPM has failed and continues to fail to comply with Administrative Order 16312 issued by Ecology on October 24, 2019 by failing to submit all documentation required to obtain permits and/or approvals for construction and/or installation to the City of Seattle no later than October 30, 2019; failing to revise its SWPPP to include additional operational and/or structural source control BMPs by the prescribed deadline of October 30, 2019; failing to complete installation of Phase 1 treatment BMPs; failing to submit to Ecology complete and accurate progress reports each and every month since November 2019; failing to modify its SWPPP, increase sampling frequency, collect representative sampling, and report monthly sampling data; failing to submit an adequate engineering report; and failing to submit a pilot study/bench test with the Phase 2 engineering report. These requirements and PPM's violations thereof are described in section VIII of the Notice Letter, attached hereto as Exhibit 1, and are incorporated herein by this reference.

42.     PPM has failed to comply with Condition S5.E.2 of the Permits which prohibits illicit discharges not authorized by the Permits. Condition S7.B.3.b of the Permits also requires PPM to eliminate illicit discharges within 30 days of discovery, and Condition S3.B.4.b.i.7 of the Permits requires PPM's SWPPP to include measures to identify and eliminate illicit discharges to surface waters. PPM violated and continues to violate this requirement by failing to eliminate

COMPLAINT - 16

its illicit discharges altogether over the last five years and by failing to include measures to identify and eliminate illicit discharges in its SWPPP.

43.     Condition S9.E of the Permits requires PPM to take certain actions, including reporting to Ecology, in the event PPM is unable to comply with any terms and conditions of the Permits which may endanger human health or the environment. PPM has failed to comply with these requirements of the Permits by failing to report and subsequently correct permit violations, including each and every time PPM failed to comply with corrective action requirements as described above in paragraphs 32-39, each and every time PPM failed to sample stormwater discharge as described above in paragraph 29, each and every illicit or unpermitted discharge as described above in paragraph 42, and each and every time PPM discharged stormwater with amounts of pollutants in excess of the Permit benchmarks or effluent limits as described in paragraphs 22-24 above. These requirements and PPM's violations thereof are described in section VII of the Notice Letter, attached hereto as Exhibit 1, and incorporated herein by this reference.

44.     Each of PPM's violations of the Permits and the CWA are ongoing in that they are currently occurring or are likely to re-occur at least intermittently in the future.

45.     A significant penalty should be imposed against PPM pursuant to the penalty factors set forth in 33 U.S.C. § 1319(d).

46.     PPM's violations were avoidable had PPM been diligent in overseeing facility operations and maintenance.

47.     PPM has benefited economically as a consequence of its violations and its failure to implement stormwater management improvements at the facility.

COMPLAINT - 17

48.     In accordance with Section 505(c)(3) of the CWA, 33 U.S.C. § 1365(c)(3), and 40 C.F.R. § 135.4, Soundkeeper is mailing a copy of this Complaint to the Administrator of the EPA, the Regional Administrator for Region 10 of the EPA, and the Attorney General of the United States.

## VI.     CAUSES OF ACTION

**A.     Violation of NPDES Permit**

49.     The preceding paragraphs and the allegations in the Notice Letter attached hereto as <u>Exhibit 1</u> are incorporated herein.

50.     PPM's violations of the Permits described herein and in the Notice Letter constitute violations of "effluent standards or limitations" as defined by Section 505(f) of the CWA, 33 U.S.C. § 1365(f).

52.     No agency has taken an enforcement action constituting diligent prosecution or otherwise precluding claims under 33 USC 1365(a).

53.     Prior notice of violations and claims was provided to Defendant and others as required.

54.     These violations committed by PPM are ongoing or are reasonably likely to continue to occur. Any and all additional violations of the Permits and the CWA which occur after those described in Soundkeeper's Notice Letter, but before a final decision in this action, should be considered ongoing violations subject to this Complaint.

55.     Without the imposition of appropriate civil penalties and the issuance of an injunction, PPM is likely to continue to violate the Permits and the CWA to the further injury of Soundkeeper, its members, and others.

COMPLAINT - 18

Smith & Lowney, PLLC
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

**B.      Violation of Administrative Order 16312**

56.      PPM's violations of Administrative Order 16312 described herein and in the Notice Letter constitute violations of Section 505(a)(1)(B) of the CWA, 33 U.S.C. § 1365(a)(1)(B).

57.      No agency has taken an enforcement action constituting diligent prosecution or otherwise precluding claims under 33 USC 1365(a).

58.      Prior notice of violations and claims was provided to Defendant and others as required.

59.      These violations committed by PPM are ongoing or are reasonably likely to continue to occur. Any and all additional violations of Administrative Order 16312 and the CWA which occur after those described in Soundkeeper's Notice Letter, but before a final decision in this action, should be considered ongoing violations subject to this Complaint.

60.      Without the imposition of appropriate civil penalties and the issuance of an injunction, PPM is likely to continue to violate Administrative Order 16312 and the CWA to the further injury of Soundkeeper, its members, and others.

## VII.    RELIEF REQUESTED

Wherefore, Soundkeeper respectfully requests that this Court grant the following relief:

A.      Issue a declaratory judgment that PPM has violated and continues to be in violation of the Permits and Sections 301 and 402 of the CWA, 33 U.S.C. §§ 1311 and 1342;

B.      Enjoin PPM from operating the facility in a manner that results in further violations of the Permits and the CWA;

C.      Order PPM to immediately implement a SWPPP that complies with the 2020 Permit;

COMPLAINT - 19

D.      Order PPM to allow Puget Soundkeeper to participate in the development and
implementation of PPM's SWPPP;

E.      Order PPM to comply with Administrative Order 16312;

F.      Order PPM to provide Puget Soundkeeper Alliance, for a period beginning on the
date of the Court's Order and running for three years after PPM achieves compliance with all of
the conditions of the Permits and Administrative Order 16312, with copies of all reports and
other documents which PPM submits to Ecology regarding PPM's coverage under the Permits
and Administrative Order 16312 at the facility at the time these documents are submitted to
Ecology;

G.      Order PPM to take specific actions to remediate the environmental harm caused
by its violations;

H.      Order PPM to pay civil penalties of $59,973 per day of violation for each
violation committed by PPM, pursuant to Sections 309(d) and 505(a) of the CWA, 33 U.S.C. §§
1319(d) and 1365(a), and 40 C.F.R. § 19 and 19.4;

I.      Award Puget Soundkeeper Alliance its litigation expenses, including reasonable
attorneys' and expert witnesses' fees, as authorized by Section 505(d) of the CWA, 33 U.S.C. §
1365(d), and any other applicable authorization; and

J.      Award such other relief as this Court deems appropriate.


RESPECTFULLY SUBMITTED this 16th day of June, 2022


                    Smith & Lowney, PLLC
            By:     *s/Richard A. Smith*
                    Richard A. Smith, WSBA #21788
            By:     *s/Savannah Rose*
                    Savannah Rose, WSBA #57062

COMPLAINT - 20

Attorneys for Plaintiff
2317 E. John St.,
Seattle, WA 98112
Tel: (206) 860-2124
Fax: (206) 860-4187
E-mail: richard@smithandlowney.com,
savannah@smithandlowney.com

COMPLAINT - 21

Exhibit 1

# SMITH & LOWNEY, PLLC
### 2317 EAST JOHN STREET
### SEATTLE, WASHINGTON 98112
### (206) 860-2883, FAX (206) 860-4187

March 18, 2022

**Via Certified Mail - Return Receipt Requested**

Managing Agent
Pacific Pile & Marine LP
700 S Riverside Dr
Seattle, WA 98108

Managing Agent
Hurlen Construction Company
2505 School Street
Solvang, CA 93463

Re:    **NOTICE OF INTENT TO SUE UNDER THE CLEAN WATER ACT AND
REQUEST FOR COPY OF STORMWATER POLLUTION PREVENTION
PLAN**

Dear Managing Agent:

We represent Puget Soundkeeper Alliance ("Soundkeeper"), 130 Nickerson St. #107,
Seattle, WA 98109, (206) 297-7002. Any response or correspondence related to this matter
should be directed to us at the letterhead address. This letter is to provide you with sixty days'
notice of Soundkeeper's intent to file a citizen suit against Pacific Pile & Marine LP and
Hurlen Construction Company (collectively "PPM"), under section 505 of the Clean Water
Act ("CWA"), 33 U.S.C. § 1365, for the violations described below. This letter is also a
request for a copy of the complete and current stormwater pollution prevention plan
("SWPPP") required by PPM's National Pollution Discharge Elimination System ("NPDES")
permit.

PPM was granted coverage under the Industrial Stormwater General Permit ("ISGP")
issued by the Washington Department of Ecology ("Ecology") effective January 2, 2015 and
expired on December 31, 2019, under NPDES No. WAR301516 (the "2015 Permit").
Ecology granted PPM coverage under the current iteration of the ISGP effective January 1,
2020, set to expire on December 31, 2024 (the "2020 Permit"), which maintains the same
permit number: WAR301516.

PPM has violated and continues to violate effluent standards and limitations under the
CWA (see 33 U.S.C. § 1365(f)) including the terms and conditions of the 2015 Permit and the
2020 Permit (collectively, the "Permits") with respect to operations of, and discharges of
stormwater and pollutants from its Pacific Pile & Marine Main Yard facility located at or
about 700 S Riverside Dr. Seattle, WA 98108 as described herein, to the Duwamish

Notice of Intent to Sue - 1

Waterway via storm drain and then to the Puget Sound. The facility subject to this notice includes any contiguous or adjacent properties owned or operated by PPM.

PPM is also in violation of the requirement of Administrative Order 16312, issued by Ecology on October 24, 2019 for failing to comply with the Administrative Order, as described below in section XIII of this Notice of Intent to Sue. Violation of the order is violation of an order concerning an NPDES permit is enforceable under 33 U.S.C. § 1365(a)(1)(B).

PPM is also in violation of the prohibition on unpermitted discharges of 33 U.S.C. § 1311(a) by discharging unauthorized stormwater effluent and wastewater containing pollutants from barges docked at its facility to the Duwamish River which are not authorized by the Permits or any other NPDES permit, as described below in section IX of this Notice of Intent to Sue.

I.       **COMPLIANCE WITH APPLICABLE STANDARDS**

   A.  **Compliance with Water Quality Standards**

Condition S10.A of the Permits prohibits discharges that cause or contribute to violations of water quality standards. Water quality standards are the foundation of the CWA and Washington's efforts to protect clean water. In particular, water quality standards represent the U.S. Environmental Protection Agency ("EPA") and Ecology's determination, based on scientific studies, of the thresholds at which pollution starts to cause significant adverse effects on fish or other beneficial uses. For each water body in Washington, Ecology designates the "beneficial uses" that must be protected through the adoption of water quality standards.

A discharger must comply with both narrative and numeric criteria water quality standards. WAC 173-201A-010; WAC 173-201A-510 ("No waste discharge permit can be issued that causes or contributes to a violation of water quality criteria, except as provided for in this chapter."). Narrative water quality standards provide legal mandates that supplement the numeric criteria. Furthermore, the narrative water quality standard applies with equal force even if Ecology has established a numeric water quality standard. Specifically, Condition S10.A of the Permits requires that PPM's discharges not cause or contribute to an excursion of Washington State water quality standards.

PPM discharges to the Duwamish Waterway via storm drain and then to Puget Sound. PPM discharges stormwater that contains elevated levels of turbidity, copper, and zinc as indicated in Table 1 through Table 5 below. Moreover, the discharges PPM has sampled and reported underrepresent the polluted condition of its facility discharges, as explained below. These discharges cause and/or contribute to violations of water quality standards, in the Duwamish Waterway and Puget Sound, and have occurred each and every day for the last five years on which there was 0.1 inch or more of precipitation, and continue to occur. *See* WAC 173-201A-260 (including toxics and aesthetics criteria); WAC 173-201A-240 (toxic substances); WAC 173-201A-610 (use designations for marine waters); WAC 173-201-612

(use designations for marine water including Puget Sound); WAC 173-201A-602 (use designations for fresh waters by water resource inventory area, including the Duwamish); WAC 173-201A-240 (including criteria for copper and zinc); WAC 173-201A-210 (including criteria for turbidity).

**Table 1: Monitoring Point 001 Benchmark Exceedances**

| Quarter in which sample was collected | Turb (Benchmark: 25 NTU) | Cu (Benchmark: 14 µg/L) | Zn (Benchmark: 117 µg/L) |
|---|---|---|---|
| First Quarter 2020 | 121 | 34.8 | 182 |
| Second Quarter 2020 | 56.7 | 47 | |
| Third Quarter 2020 | 50.4 | 29.8 | |
| Third Quarter 2021 | 71.5 | 22.8 | |
| Fourth Quarter 2021 | 91.1 | 21.6 | |

**Table 2: Monitoring Point 002 Benchmark Exceedances**

| Quarter in which sample was collected | Turb (Benchmark: 25 NTU) | Cu (Benchmark: 14 µg/L) | Zn (Benchmark: 117 µg/L) |
|---|---|---|---|
| Second Quarter 2017 | | 128 | |
| Third Quarter 2017 | | 324 | |
| Fourth Quarter 2017 | 30 | 170.25 | |
| First Quarter 2018 | | 55.2 | |
| Second Quarter 2018 | 29 | 38 | |
| Fourth Quarter 2018 | 62 | 245 | |
| First Quarter 2019 | | 37.8 | |
| Second Quarter 2019 | | 32.1 | |
| Third Quarter 2019 | 26.2 | 100 | |
| Fourth Quarter 2019 | | 43.1 | |
| First Quarter 2020 | | 19.4 | |
| Second Quarter 2020 | 26.8 | 33.8 | |
| Third Quarter 2020 | 366.5 | 96.55 | |
| Fourth Quarter 2020 | 52.3 | | |
| First Quarter 2021 | 96 | 77.9 | 166 |
| Second Quarter 2021 | 29 | 14.4 | |
| Third Quarter 2021 | 126 | 24.4 | |
| Fourth Quarter 2021 | 785 | 90.1 | 171 |

**Table 3: Monitoring Point 003 Benchmark Exceedances**

| Quarter in which sample was collected | Turb (Benchmark: 25 NTU) | Cu (Benchmark: 14 µg/L) | Zn (Benchmark: 117 µg/L) |
|---|---|---|---|
| Second Quarter 2017 | | 157 | 1240 |
| Third Quarter 2017 | 52 | 19.1 | 319 |
| Fourth Quarter 2017 | | 52.3 | |
| First Quarter 2018 | 92 | 563 | 483 |
| Second Quarter 2018 | 41 | 269 | 217 |
| Fourth Quarter 2018 | | 30.7 | |

| Fourth Quarter 2019 |     | 202  | 206 |
|---------------------|-----|------|-----|
| First Quarter 2020  |     | 154  | 183 |
| Second Quarter 2020 |     | 299  | 194 |
| Third Quarter 2020  |     | 217  | 289 |
| Fourth Quarter 2020 |     | 22.1 | 147 |
| First Quarter 2021  | 211 | 54.2 |     |
| Third Quarter 2021  |     | 18.2 |     |
| Fourth Quarter 2021 |     |      | 149 |

**Table 4: Monitoring Point 004 Benchmark Exceedances**

| Quarter in which sample was collected | Turb (Benchmark: 25 NTU) | Cu (Benchmark: 14 µg/L) | Zn (Benchmark: 117 µg/L) |
|---------------------------------------|--------------------------|-------------------------|--------------------------|
| Fourth Quarter 2017 |        | 15.3  |      |
| First Quarter 2018  | 39     | 238   | 161  |
| Second Quarter 2018 | 92     |       |      |
| Fourth Quarter 2018 | 497    | 225   | 807  |
| Second Quarter 2019 | 45     | 46.5  | 112  |
| Third Quarter 2019  | 439    | 32.2  | 452  |
| Fourth Quarter 2019 | 544    | 326   | 1240 |
| First Quarter 2020  | 650    | 237   | 674  |
| Second Quarter 2020 | 86.5   | 1270  |      |
| Third Quarter 2020  | 223.15 | 35.95 |      |
| Fourth Quarter 2020 | 51.4   |       |      |
| Second Quarter 2021 | 266    | 61.4  | 177  |
| Third Quarter 2021  | 45.1   | 31.9  |      |
| Fourth Quarter 2021 | 759    | 136   | 294  |

**Table 5: Monitoring Point 005 Benchmark Exceedances**

| Quarter in which sample was collected | Turb (Benchmark: 25 NTU) | Cu (Benchmark: 14 µg/L) |
|---------------------------------------|--------------------------|-------------------------|
| Fourth Quarter 2019 | 34 | 15.3 |

    **B.**     **Compliance with AKART Standards**

    Condition S10.C of the Permits requires PPM to apply all known and reasonable methods of prevention, control, and treatment ("AKART") to all discharges, including preparation and implementation of an adequate SWPPP and best management practices ("BMPs"). PPM has violated and continues to violate these conditions by failing to apply AKART to its discharges or to implement an adequate SWPPP and BMPs as evidenced by the elevated levels of pollutants in its discharge indicated in Table 1 through Table 9 and as described in this Notice of Intent to Sue.

    Condition S1.A of the Permits requires that all discharges and activities authorized be consistent with the terms and conditions of the Permits. PPM has violated these conditions by

discharging and acting inconsistent with the conditions of the Permits as described in this Notice of Intent to Sue.

## II.        EFFLUENT LIMITATION VIOLATIONS.

Condition S6.C.1 of the Permits requires permittees discharging to a "303(d)-listed" waterbody (Water Quality Category 5), either directly or indirectly through a stormwater drainage system must comply with the applicable sampling requirements and numeric effluent limits in Table 6 of the Permits. The "applicable sampling requirements and numeric effluent limits" means the sampling and effluent limits in Table 6 of the Permits that correspond to the specific parameter(s) the receiving water is 303(d)-listed for at the time of permit coverage, or total suspended solids ("TSS") if the waterbody is 303(d)-listed for sediment quality at the time of permit coverage.

PPM discharges via a storm drain to the Duwamish Waterway, which is 303(d)-listed for sediment quality and a Puget Sound Sediment Cleanup Site. PPM's discharges are subject to a maximum daily effluent limitation of 30 mg/L for TSS. PPM discharges stormwater that contains elevated levels of TSS in excess of the corresponding numeric effluent limitation, as indicated in Table 6 through Table 9 below. Each and every one of these discharges is a separate violation of the sampling and effluent limits applicable to discharges to 303(d)-listed waters and sampling requirements applicable to discharges to Puget Sound Sediment Cleanup Sites.

**Table 6: Monitoring Point 001 Effluent Limit Violations**

| Quarter in which sample was collected | TSS (Effluent Limitation: 30 mg/L) |
|---|---|
| First Quarter 2020 | 67 |
| Second Quarter 2020 | 51 |

**Table 7: Monitoring Point 002 Effluent Limit Violations**

| Quarter in which sample was collected | TSS (Effluent Limitation: 30 mg/L) |
|---|---|
| Third Quarter 2020 | 98 |
| First Quarter 2021 | 226 |
| Third Quarter 2021 | 38 |
| Fourth Quarter 2021 | 82 |

**Table 8: Monitoring Point 003 Effluent Limit Violations**

| Quarter in which sample was collected | TSS (Effluent Limitation: 30 mg/L) |
|---|---|
| Second Quarter 2017 | 166 |
| First Quarter 2021 | 634 |

**Table 9: Monitoring Point 004 Effluent Limit Violations**

| Quarter in which sample was collected | TSS (Effluent Limitation: 30 mg/L) |
|---|---|
| Second Quarter 2018 | 138 |
| Fourth Quarter 2018 | 1350 |
| Second Quarter 2019 | 66 |

| Fourth Quarter 2019 | 370 |
| First Quarter 2020 | 532 |
| Second Quarter 2020 | 138 |
| Fourth Quarter 2020 | 34 |
| Second Quarter 2021 | 335 |
| Third Quarter 2021 | 34 |
| Fourth Quarter 2021 | 136 |

## III.    STORMWATER POLLUTION PREVENTION PLAN VIOLATIONS

PPM is in violation of the Permits' SWPPP provisions as follows:

1. Condition S3.A of the Permits requires PPM to develop and implement a SWPPP that contains specified components. Condition S3.A.2 of the 2015 Permit and Condition S3.A.1 of the 2020 Permit requires the SWPPP to specify BMPs necessary to provide AKART and ensure that discharges do not cause or contribute to violations of water quality standards. PPM has violated these requirements of the Permits each and every day for the last five years and continues to violate them as it has failed to prepare and/or implement a SWPPP that includes AKART BMPs and BMPs necessary to comply with state water quality standards.

2. Condition S3.A of the Permits requires PPM to have and implement a SWPPP that is consistent with permit requirements, fully implemented as directed by permit conditions, and updated as necessary to maintain compliance with permit conditions. PPM has violated these requirements of the Permits each and every day for the last five years and continues to violate them because its SWPPP is not consistent with permit requirements, has not been fully implemented, and has not been updated as necessary, including correcting the deficiencies identified in writing from Ecology's July 19, 2021 Inspection Report; October 24, 2019 Administrative Order 16312; September 16, 2019 email to PPM; and December 6, 2018 Inspection Report within 30 days of notice.

3. The SWPPP fails to satisfy the requirements of Condition S3 of the Permits because it does not adequately describe BMPs. Condition S3.B.4 of the Permits requires that the SWPPP include a description of the BMPs that are necessary for the facility to eliminate or reduce the potential to contaminate stormwater. Condition S3.A of the Permits requires that the SWPPP include BMPs consistent with approved stormwater technical manuals or document how stormwater BMPs included in the SWPPP are demonstratively equivalent to the practices contained in the approved stormwater technical manuals, including the proper selection, implementation, and maintenance of all applicable and appropriate BMPs. *See Stormwater Management Manual for Western Washington*, July 2019, https://fortress.wa.gov/ecy/ezshare/wq/Permits/Flare/2019SWMMWW/Content/Resources/D ocsForDownload/2019SWMMWW.pdf. PPM's SWPPP does not comply with these requirements because it does not adequately describe BMPs and does not include BMPs consistent with approved stormwater technical manuals nor does it include BMPs that are demonstratively equivalent to such BMPs with documentation of BMP adequacy.

4. PPM's SWPPP fails to satisfy the requirements of Condition S3.B.2 of the Permits because it fails to include a facility assessment as mandated. The SWPPP fails to include an adequate facility assessment because it does not describe the industrial activities conducted at the site, the general layout of the facility including buildings and storage of raw materials, the flow of goods and materials through the facility, regular business hours, and seasonal variations in business hours or in industrial activities as required.

5. PPM's SWPPP fails to satisfy the requirements of Condition S3.B.1 of the Permits because it does not include a site map that identifies significant features, the stormwater drainage and discharge structures, the stormwater drainage areas for each stormwater discharge point off-site, a unique identifying number for each discharge point, each sampling location with a unique identifying number, paved areas and buildings, areas of pollutant contact associated with specific industrial activities, conditionally approved non-stormwater discharges, surface water locations, areas of existing and potential soil erosion, vehicle maintenance areas, and lands and waters adjacent to the site that may be helpful in identifying discharge points or drainage routes.

6. PPM's SWPPP fails to comply with Condition S3.B.2.b of the Permits because it does not include an inventory of industrial activities that identifies all areas associated with industrial activities that have been or may potentially be sources of pollutants as required. The SWPPP does not identify all areas associated with loading and unloading of dry bulk materials or liquids, outdoor storage of materials or products, outdoor manufacturing and processing, onsite dust or particulate generating processes, on-site waste treatment, storage, or disposal, vehicle and equipment fueling, maintenance, and/or cleaning, roofs or other surfaces exposed to air emissions from a manufacturing building or a process area, and roofs or other surfaces composed of materials that may be mobilized by stormwater as required by these conditions.

7. PPM's SWPPP does not comply with Condition S3.B.2.c of the Permits because it does not include an adequate inventory of materials. The SWPPP does not include an inventory of materials that lists the types of materials handled at the site that potentially may be exposed to precipitation or runoff and that could result in stormwater pollution, a short narrative for material describing the potential for the pollutants to be present in stormwater discharge that is updated when data becomes available to verify the presence or absence of the pollutants, a narrative description of any potential sources of pollutants from past activities, materials and spills that were previously handled, treated, stored, or disposed of in a manner to allow ongoing exposure to stormwater as required. The SWPPP does not include the method and location of on-site storage or disposal of such materials and a list of significant spills and significant leaks of toxic or hazardous pollutants as these permit conditions require.

8. PPM's SWPPP does not comply with Condition S3.B.3 of the Permits because it does not identify specific individuals by name or title whose responsibilities include SWPPP development, implementation, maintenance, and modification.

9. Condition S3.B.4 of the Permits requires that permittees include in their SWPPPs and implement mandatory BMPs. PPM is in violation of this requirement because it has failed to include in its SWPPP and implement the mandatory BMPs of the Permits.

10. PPM's SWPPP does not comply with Condition S3.B.4.b.i of the Permits because it does not include required operational source control BMPs. PPM fails to include operation source control BMPs in the following categories: good housekeeping (including the definition of ongoing maintenance and cleanup of areas that may contribute pollutants to stormwater discharges, and a schedule/frequency for each housekeeping task); preventive maintenance (including BMPs to inspect and maintain stormwater drainage, source controls, treatment systems, and plant equipment and systems, and the schedule/frequency for each task); spill prevention and emergency cleanup plan (including BMPs to prevent spills that can contaminate stormwater, for material handling procedures, storage requirements, cleanup equipment and procedures, and spill logs); employee training (including an overview of what is in the SWPPP, how employees make a difference in complying with the SWPPP, spill response procedures, good housekeeping, maintenance requirements, and material management practices, how training will be conducted, the frequency/schedule of training, and a log of the dates on which specific employees received training); inspections and recordkeeping (including documentation of procedures to ensure compliance with permit requirements for inspections and recordkeeping, identification of personnel who conduct inspections, provision of a tracking or follow-up procedure to ensure that a report is prepared and appropriate action taken in response to visual monitoring, definition of how PPM will comply with signature and record retention requirements, and certification of compliance with the SWPPP and Permit). Some of the BMPs that PPM is failing to implement as evidenced by Inspection Reports, Permit Non-Compliance Reports, emails from Ecology, Recommendation for Enforcement Actions, and ERTS (Environmental Report Tracking System) reports include:

- Failure to prevent or minimize leaks and spills, documented by the July 19, 2021 Inspection Report, December 6, 2018 Inspection Report, ERTS #663441, and ERTS #695681;
- Failure to prevent debris from contaminating the surrounding area, documented by the first quarter 2021 Permit Non-Compliance Report, July 18, 2018 Notice of Violation, ERTS #701592, and October 22, 2019 Recommendation for Enforcement Action;
- Failure to maintain ponds, tanks/vaults, catch basins, swales, filters, oil/water separators, drains and areas immediately around these structures, documented by the July 19, 2021 Inspection Report;
- Failure to contain/cover exposed tools, machinery, equipment, chains, cables, riggings, and scrap metal, documented by the July 19, 2021 and August 12, 2019 Inspection Reports;
- Failure to stock adequate spill kits in the requires locations, documented by the July 19, 2021 Inspection Report;
- Failure to keep all dumpsters under cover or fit with storm resistant lids that must remain closed when not in use, documented by the July 19, 2021 and December 6, 2018 Inspection Reports;

- Failure to provide adequate containment/cover for chemicals, fluids, oil, materials, and equipment, documented by the July 19, 2021 and December 6, 2018 Inspection Reports;
- Failure to inspect all equipment and vehicles during monthly site inspections for leaking fluids and taking leaking vehicles/equipment out of service until repaired, documented by the July 19, 2021 Inspection Report;
- Failure to prevent erosion and stabilize exposed soils on-site, as documented by the January 29, 2020 email from Ecology;
- Failure to remove the wash area and equipment next to the shop as required by Ecology in the July 19, 2021 Inspection Report;
- Failure to maintain the unpaved yard, such as adding a new layer of crushed rock or paving the yard, as documented by the first quarter 2021 Permit Non-Compliance Report, the February 6, 2021 Corrections Required form, third quarter 2020 Permit Non-Compliance Report, fourth quarter 2019 Permit Non-Compliance Report, second quarter 2019 Permit Non-Compliance Report, the December 6, 2018 Inspection Report, ERTS #701592, and ERTS #690676;
- Failure to maintain the degrading dock as documented by the first quarter 2021 Permit Non-Compliance Report;
- Failure to adequately sweep the paved areas of the site, as documented by the first quarter 2021 Permit Non-Compliance Report, and ERTS #701592;
- Failure to minimize oil and grease contamination of stormwater discharges as documented by the December 6, 2018 Inspection Report; and
- Failure to drain fluids from vehicles and equipment prior to on-site storage or disposal, documented by the July 19, 2021 Inspection Report.

11. PPM's SWPPP does not comply with Condition S3.B.4.b.i.7 of the Permits because it does not include measures to identify and eliminate the discharge of process wastewater, domestic wastewater, noncontact cooling water, and other illicit discharges to stormwater sewers or surface waters and ground waters of the state, including failing to prevent solids from entering the stormwater and discharging off-site.

12. PPM's SWPPP does not comply with Condition S3.B.4.b.ii of the Permits because it does not include required structural source control BMPs to minimize the exposure of manufacturing, processing, and material storage areas to rain, snow, snowmelt, and runoff.

13. PPM's SWPPP does not comply with Condition S3.B.4.b.iii of the Permits because it does not include treatment BMPs as required.

14. PPM's SWPPP fails to comply with Condition S3.B.4.b.v of the Permits because it does not include BMPs to prevent the erosion of soils or other earthen materials and prevent off-site sedimentation and violations of water quality standards.

15. PPM's SWPPP fails to satisfy the requirements of Condition S3.B.5 of the Permits because it fails to include a stormwater sampling plan as required. The SWPPP does not include a sampling plan that: identifies points of discharge to surface waters, storm sewers, or discrete ground water infiltration locations; documents why each discharge point is not

sampled; identifies each sampling point by its unique identifying number; identifies staff responsible for conducting stormwater sampling; specifies procedures for sampling collection and handling; specifies procedures for sending samples to the a laboratory; identifies parameters for analysis, holding times and preservatives, laboratory quantization levels, and analytical methods; and specifies the procedure for submitting the results to Ecology.

## IV.    MONITORING AND REPORTING VIOLATIONS

### A.    Failure to Collect Quarterly Samples

Condition S4.B of the Permits requires PPM to collect a sample of its stormwater discharge once during every calendar quarter. PPM violated this requirement by failing to collect stormwater samples for Monitoring Point 002 during the first quarter 2017, and third quarter 2018; Monitoring Point 003 during the first quarter 2017, third quarter 2018, and first quarter 2019; Monitoring Point 004 during first quarter 2017, third quarter 2017, third quarter 2018, and first quarter 2019.

Condition S4.B.2.c of the 2015 Permit and S4.B.3.a of the 2020 Permit require PPM to collect stormwater samples at each distinct point of discharge offsite except for substantially identical outfalls, in which case only one of the substantially identical outfalls must be sampled. These conditions set forth sample collection criteria but require the collection of a sample even if the criteria cannot be met. According to the July 19, 2021 Inspection Report, PPM incorrectly samples on the northeast side of the dock and it should be sampling closer to the crane pad. Additionally, as stated in the August, 12, 2019 Inspection Report, PPM moved the discharge sample at Monitoring Point 003 without notifying Ecology to a raised metal plate on top of the dock that was not collecting any stormwater discharges. These incorrect sample point placements have resulted in a failure to take representative samples of stormwater discharge associated with the crane operation and stormwater discharges from the dock. Furthermore, PPM has multiple distinct points of discharge where stormwater is leaving the facility that it is not sampling and analyzing appropriately. There are other points of stormwater discharge from the facility and PPM is in violation of these conditions of the Permits by failing to collect and analyze samples from them during every quarter for the last five years. These violations will continue until PPM commences proper monitoring all distinct points of discharge.

### B.    Failure to Correctly and Timely Submit Discharge Monitoring Reports

Condition S9.A of the 2015 Permit and Condition S9.B of the 2020 Permit require PPM to use Discharge Monitoring Report ("DMR") forms provided or approved by Ecology to summarize, report and submit monitoring data to Ecology. For each monitoring period (calendar quarter) a DMR must be completed and submitted to Ecology not later than 45 days after the end of the monitoring period. PPM has violated these conditions by failing to submit a DMR within the time prescribed for the first quarter 2017, first quarter 2018, fourth quarter 2019, and second quarter 2020.

### C.       Failure to Comply with Visual Monitoring Requirements

Condition S7.A of the Permits requires that a monthly visual inspection be conducted at the facility by qualified personnel. Condition S7.B of the Permits requires each inspection to include observations made at stormwater sampling locations and areas where stormwater associated with industrial activity is discharged; observations for the presence of floating materials, visible oil sheen, discoloration, turbidity, odor, etc. in the stormwater discharges; observations for the presence of illicit discharges; a verification that the descriptions of potential pollutant sources required by the permit are accurate; a verification that the site map in the SWPPP reflects current conditions; and an assessment of all BMPs that have been implemented (noting the effectiveness of the BMPs inspected, the locations of BMPs that need maintenance, the reason maintenance is needed and a schedule for maintenance, and locations where additional or different BMPs are needed). PPM has violated and continues to violate these requirements because, for the last five years, it has failed to conduct each of the requisite visual monitoring and inspections each and every month.

Condition S7.C of the Permits requires that PPM record the results of each inspection in an inspection report or checklist that is maintained on-site and documents the observations, verifications, and assessments required. The report/checklist must include the time and date of the inspection; the locations inspected; a statement that, in the judgment of the person conducting the inspection and the responsible corporate officer, the facility is either in compliance or out of compliance with the SWPPP and the Permits; a summary report and schedule of implementation of the remedial actions PPM plans to take if the site inspection indicates that the facility is out of compliance; the name, title, signature and certification of the person conducting the facility inspection; and a certification and signature of the responsible corporate officer or a duly authorized representative. PPM is in violation of these requirements because, for the last five years, it failed to prepare and maintain the requisite inspection reports or checklists and failed to make the requisite certifications and summaries.

## V.       CORRECTIVE ACTION VIOLATIONS

### A.       Violations of the Level One Requirements

Condition S8.B of the Permits requires PPM take specified actions, called a "Level One Corrective Action," each time quarterly stormwater sample results exceed a benchmark value or are outside the benchmark range. Condition S5.A Table 2 of the Permits establishes the following benchmarks: turbidity 25 NTU; pH 5–9 SU; total copper 14 µg/L; total zinc 117 µg/L; and no visible oil sheen

As described by Condition S8.B of the Permits, a Level One Corrective Action requires that within 14 days of receipt of sampling results that indicate a benchmark exceedance during a given quarter; or, for parameters other than pH or visible oils sheen, the end of the quarter, whichever is later, PPM shall: (1) conduct an inspection to investigate the cause; (2) review the SWPPP for the facility and ensure that it fully complies with Condition S3 of the Permits and contains the correct BMPs from the applicable Stormwater Management Manual; (3) make appropriate revisions to the SWPPP to include additional

operational source control BMPs with the goal of achieving the applicable benchmark values in future discharges; (4) summarize the Level One Corrective Action in the Annual Report required under Condition S9.B of the Permits; and (5) and sign, certify, and fully implement the revised SWPPP in accordance with Condition S3 of the Permits and the applicable stormwater management manual as soon as possible, and no later than the DMR due date for the quarter the benchmark was exceeded.

PPM is in violation of the Level One Corrective Action requirements in the Permits. It failed to implement a Level One Corrective Action within 14 days of receipt or the end of the quarter for each and every benchmark exceedance, including the exceedances in the second quarter 2017, third quarter 2017, fourth quarter 2017, first quarter 2018, second quarter 2018, fourth quarter 2018, first quarter 2019, second quarter 2019, third quarter 2019, fourth quarter 2019, first quarter 2020, second quarter 2020, third quarter 2020, fourth quarter 2020, first quarter 2021, second quarter 2021, and third quarter 2021 as identified in Table 1 through Table 5 above. PPM's failures to comply with the Level One Corrective Action requirements include the failure to conduct an inspection to investigate the cause; perform the required review; revision and certification of the SWPPP; perform required implementation of additional BMPs; complete the required summarization in the Annual Report; and sign, certify, and fully implement the revised SWPPP in accordance with Condition S3 of the Permit each and every time, during the last five years, when its quarterly stormwater sampling results were greater than a benchmark or outside the benchmark range.

### B.      Violations of the Level Two Requirements

Condition S8.C of the Permits requires PPM take specified actions, called a "Level Two Corrective Action," each time quarterly stormwater sample results exceed an applicable benchmark value or are outside the benchmark range in any two quarters during a calendar year. The Permits establish the benchmarks applicable to PPM, which are described in section V.A of this Notice of Intent to Sue.

As described by Condition S8.C of the Permits, a Level Two Corrective Action requires PPM: (1) review the SWPPP for the facility and ensure that it fully complies with Condition S3 of the Permits; (2) make appropriate revisions to the SWPPP to include additional structural source control BMPs with the goal of achieving the applicable benchmark value(s) in future discharges; (3) summarize the Level Two Corrective Action (planned or take) in the Annual Report required under Condition S9.B of the Permits; and (4) sign, certify, and implement the revised SWPPP according to Condition S3 of the Permits and the applicable stormwater management manual as soon as possible, and no later than August 31 of the following year.

PPM is in violation of the Level Two Corrective Action requirements of the Permits. PPM's continuing violations of these requirements include, but are not limited to, its failure to perform a Level Two Corrective Action for zinc in third quarter 2017, copper in third quarter 2017, turbidity in fourth quarter 2017, turbidity in second quarter 2018, copper in second quarter 2018, zinc second quarter 2018, copper in second quarter 2019, turbidity in third quarter 2019, zinc in fourth quarter 2019, turbidity in second quarter 2020, copper in second

quarter 2020, zinc in second quarter 2020, turbidity in second quarter 2021, copper in second quarter 2021, and zinc in second quarter 2021 as identified in Table 1 through Table 5 above. PPM is in violation of the Permits for each instance when quarterly stormwater sampling results from the facility were greater than a benchmark or outside the benchmark range for any two quarters during a calendar year and PPM failed to conduct and complete a Level Two Corrective Action for discharges from its facility in accordance with Permits' conditions by, inter alia, completing the required review, revision and certification of the SWPPP; performing required implementation of additional BMPs, including additional structural source control BMPs; and completing required summarization in the Annual Report.

### C.        Violations of the Level Three Requirements

Condition S8.D of the Permits requires PPM take specified actions, called a "Level Three Corrective Action," each time quarterly stormwater sample results exceed an applicable benchmark value or are outside the benchmark range for any three quarters during a calendar year. The Permits establish the benchmarks applicable to PPM, which are described in section V.A of this Notice of Intent to Sue.

As described by Condition S8.D of the Permits, when PPM triggers a Level Three Corrective Action, it is required to: (1) review the SWPPP for the facility and ensure that it fully complies with Condition S3 of the Permits; (2) make appropriate revisions to the SWPPP to include additional treatment BMPs with the goal of achieving the applicable benchmark value(s) in future discharges and additional operational and/or structural source control BMPs if necessary for proper function and maintenance of treatment BMPs, and sign and certify the revised SWPPP in accordance with Condition S3.A.6 of the Permits; and (3) summarize the Level Three Corrective Action (planned or take) in the Annual Report required under Condition S9.B of the Permits, including information on how monitoring, assessment, or evaluation information was (or will be) used to determine whether existing treatment BMPs will be modified/enhanced or it new/additional treatment BMPs will be installed. Condition S8.D.2.b of the Permits require that a licensed professional engineer, geologist, hydrogeologist, or certified stormwater quality professional must design and stamp the portion of the SWPPP that addresses stormwater treatment structures or processes.

Condition S8.D.3 of the Permits requires that, before installing BMPs that require the site-specific design or sizing of structures, equipment, or processes to collect, convey, treat, reclaim, or dispose of industrial stormwater, PPM submit an engineering report, plans, and specifications, and an operations and maintenance manual to Ecology for review in accordance with chapter 173-204 of the Washington Administrative Code. The engineering report must be submitted no later than the May 15th prior to the Level Three Corrective Action Deadline. The plans and specifications and the operations and maintenance manual must be submitted to Ecology at least 30 days before construction/installation.

Condition S8.D.5 of the Permits requires PPM fully implement the revised SWPPP according to condition S3 of the Permits and the applicable stormwater management manual as soon as possible, and no later than September 30th of the following year.

PPM is in violation of the Level Three Corrective Action requirements of the Permits. PPM's continuing violations of these requirements include, but are not limited to, its failure to perform a Level Three Corrective Action for copper triggered in fourth quarter 2017, turbidity triggered in fourth quarter 2018, copper triggered in fourth quarter 2018, zinc triggered in fourth quarter 2018, copper triggered in third quarter 2019, turbidity triggered in fourth quarter 2019, turbidity triggered in third quarter 2020, copper triggered in third quarter 2020, zinc triggered in third quarter 2020, turbidity triggered in third quarter 2021, and copper triggered in third quarter 2021, as identified in Table 1 through Table 5 above. Indeed, PPM is in violation of the Permits for each instance over the last five years, in which quarterly stormwater sampling results from the facility were greater than a benchmark or outside the benchmark range for any three quarters during a calendar year and PPM failed to conduct and complete a Level Three Corrective Action for discharges from its facility in accordance with Permits' conditions by, inter alia, performing the required review, revision and certification of the SWPPP; complying with the requirement to have a specified professional design and stamp the portion of the SWPPP pertaining to treatment; completing the required implementation of additional BMPs, including additional treatment BMPs; completing the required submission of an engineering report, plans, specifications, and an operations and maintenance plan; and including the required summarization in the annual report.

## VI.     VIOLATIONS OF THE RECORDKEEPING REQUIREMENTS

### A.     Failure to Record Information

Condition S4.B of the Permits requires PPM record and retain specified information for each stormwater sample taken, including the sample date and time, a notation describing if PPM collected the sample within the first 30 minutes of stormwater discharge event, an explanation of why PPM could not collect a sample within the first 30 minutes of a stormwater discharge event, the sample location, method of sampling and of preservation, and the individual performing the sampling. PPM is in violation of these conditions as it has not recorded each of these specified items for each sample taken for the last five years.

### B.     Failure to Retain Records

Condition S9.C of the 2015 Permit and S9.D of the 2020 Permit require PPM to retain for a minimum of five years a copy of the current Permit, a copy of PPM's coverage letter, records of all sampling information, inspection reports including required documentation, any other documentation of compliance with permit requirements, all equipment calibration records, all BMP maintenance records, all original recordings for continuous sampling instrumentation, copies of all laboratory results, copies of all required reports, and records of all data used to complete the application for the Permit. PPM is in violation of these conditions because it has failed to retain records of such information, reports, and other documentation for the last five years.

## VII.    FAILURE TO REPORT PERMIT VIOLATIONS

Condition S9.E of the 2015 Permit and Condition S9.F of the 2020 Permit require PPM to take certain actions in the event it is unable to comply with any of the terms and conditions of the Permits which may endanger human health or the environment or exceed any numeric effluent limitation in the permit. In such circumstances, PPM must immediately take action to minimize potential pollution or otherwise stop the noncompliance and correct the problem, and PPM must immediately notify the appropriate Ecology regional office of the failure to comply. PPM must then submit a detailed written report to Ecology, including specified details, within 5 days of the time PPM became aware of the circumstances unless Ecology requests an earlier submission.

PPM routinely violates these requirements, including each and every time it failed to comply with the corrective action requirements described in section V of this Notice of Intent to Sue, and each and every time PPM discharged stormwater with concentrations of pollutants in excess of the Permits' benchmarks, as described in Table 1 through Table 9 above. All these violations may endanger human health or the environment.

## VIII.   FAILURE TO COMPLY WITH ADMINISTRATIVE ORDER 16312

PPM is in violation of Administrative Order 16312 as follows:

1. Corrective action requirement 1.a of Administrative Order requires PPM to submit all documentation required to obtain permits and/or approvals for construction and/or installation to the City of Seattle no later than October 30, 2019. PPM has violated and continues to violate the Administrative Order by failing to submit this documentation to the City of Seattle by the prescribed deadline of October 30, 2019 as required by corrective action requirement 1.a of Administrative Order.

2. Corrective action requirement 1.b of Administrative Order requires PPM to revise its SWPPP to include additional operational and/or structural source control BMPs that were implemented on-site with the goal of achieving ISGP benchmarks and the TSS effluent limit by October 30, 2019. PPM has violated and continues to violate the Administrative Order by failing to revise its SWPPP to include additional operational and/or structural source control BMPs by the prescribed deadline of October 30, 2019 as required by corrective action requirement 1.b of Administrative Order.

3. Corrective action requirement 1.d of Administrative Order requires PPM to complete installation of Phase 1 treatment BMPs serving all of PPM's industrial operation areas within 60 days of receiving all necessary permits and/or approvals from the City of Seattle. PPM has violated and continues to violate the Administrative Order by failing to complete installation of Phase 1 treatment BMPs for its facility as required by corrective action requirement 1.d of Administrative Order.

4. Corrective action requirement 1.e of Administrative Order requires that beginning November 2019 and continuing until the completion of the installation of Phase 1 treatment, PPM was required to submit monthly progress reports to Ecology that include all local permits and/or approvals required by the City of Seattle and the

progress that PPM has made towards obtaining the necessary permits and/or approvals for construction and/or installation; a summary of all communications with the City of Seattle related to Phase 1 construction permitting; any delays in the permitting or construction of Phase 1 treatment, and the reasons for those delays; and a description of additional operational and/or source control BMPs being implemented on-site to achieve ISGP benchmarks and the TSS effluent limit by the 15th of each month. PPM has violated and continues to violate the Administrative Order by failing to submit to Ecology complete and accurate progress reports each and every month since November 2019 as required by corrective action requirement 1.e of Administrative Order.

5.   Corrective action requirement 1.f of Administrative Order requires PPM to, immediately upon completion of Phase 1 treatment installation, modify its SWPPP to reflect updated site conditions, including changes to monitoring frequency and locations, and stormwater conveyance and treatment operations and maintenance; increase its discharge sampling frequency under ISGP condition S4 from a minimum of once per quarter to a minimum of once per month; collect representative samples at discharge point for each separate treatment system and monthly samples must be conducted for all required ISGP parameters; and report monthly sample data on Discharge Monitoring Reports within 15 days following the end of each month via Ecology's Water Quality Permitting Portal regardless of whether or not the facility discharges stormwater from the site. Exceedances of the standard ISGP benchmarks or the TSS effluent limit at any discharge monitoring point will trigger the requirement to implement Phase 2 treatment at that monitoring location. PPM has violated and continues to violate the Administrative Order by failing to modify its SWPPP, increase sampling frequency, collect representative sampling, and report monthly sampling data as required by corrective action requirement 1.f of Administrative Order.

6.   Corrective action requirement 2.b of Administrative Order requires PPM to submit to Ecology an engineering report consistent with ISGP condition S8.D.3 that included a brief summary of the treatment alternatives considered and why the proposed option was selected; basic design data; a description of the treatment process and operations; the amount and kind of chemicals used in the treatment process; the results to be expected from the treatment process; a statement expressing sound engineering justification through the use of pilot plant data, results from similar installations, and/or scientific evidence that proposed treatment is reasonably expected to meet the permit benchmarks; certification by a licensed professional engineer; and a list of local city permits and/or approvals necessary to implement the Phase 2 treatment and a schedule for obtaining such permits/approvals within 90 days of triggering Phase 2 treatment if benchmark or TSS effluent limit exceedances occur following the installation of Phase 1. PPM has violated and continues to violate the Administrative Order by failing to submit an engineering report as required by corrective action requirement 2.b of Administrative Order.

7.   Corrective action requirement 2.c of Administrative Order requires PPM to conduct a pilot study or bench testing using stormwater obtained during a representative

sampling event in order to prove the selected Phase 2 treatment system will consistently meet the ISGP benchmarks and the TSS effluent limit if benchmark or TSS effluent limit exceedances occur following the installation of Phase 1. PPM is required to submit the pilot study/bench test with the Phase 2 engineering report. PPM has violated and continues to violate the Administrative Order by failing to submit a pilot study/bench test with the Phase 2 engineering report as required by corrective action requirement 2.c of Administrative Order.

## IX.   ILLICIT AND UNPERMITTED DISCHARGES

### A.   Illicit Discharges

Condition S5.E.2 of the Permits prohibits illicit discharges not authorized by the Permits. On or around either January 22, 2019 or January 22, 2020, PPM pumped turbid water onto South Portland Street and onto the neighboring Windows 101 property. The discharges onto the street had a turbidity of 565 NTU, as documented by the Corrections Required form signed by Ecology on February 6, 2020 and communications with Ecology via email in January 2020. This turbid water reached municipal storm drains and eventually the Duwamish River. These violations occurred each and every day over the past five years on which PPM pumped water offsite (which dates are known to PPPM) and are reasonably likely to continue to occur whenever these activities continue going forward.

Condition S7.B.3.b of the Permits also requires PPM to eliminate illicit discharges within 30 days of discovery, and Condition S3.B.4.b.i.7 of the Permits requires PPM's SWPPP to include measures to identify and eliminate illicit discharges to surface waters. PPM violates this requirement by failing to eliminate its illicit discharges altogether over the last five years and by failing to include measures to identify and eliminate illicit discharges in its SWPPP.

Additionally, Condition S7.B.3.a of the Permits requires PPM to notify the Department of Ecology within seven days of any discovery of an illicit discharge. PPM violates this requirement by failing to notify Ecology about its illicit discharges within seven days of each occurrence over the past five years.

### B.   Unpermitted Discharges

The Permits authorize only the discharges of stormwater and pollutants contained in stormwater. PPM does not possess and has never possessed an NPDES permit for its non-stormwater direct discharges from vessel deconstruction activities to the Duwamish River. The point sources of unpermitted discharges of pollutants at PPM's facility include all vessel deconstruction-related activities. These point source discharges violate the Clean Water Act's § 301(a), 33 U.S.C. § 1311(a), prohibition on pollutant discharges because they are not authorized by an NPDES permit.

PPM conducted deconstruction activities on a fish processing barge, the Atlantis, between about August 1, 2017 and June 27, 2018. On August 1, 2017, Ecology staff visited

PPM's site to confirm that vessel deconstruction activities were occurring. On August 2, 2017, Ecology sent PPM an email stating that PPM did not have the required NPDES permit to conduct these activities. An internal Ecology email dated August 10, 2017 confirmed that PPM was aware of the requirement to obtain the correct NPDES permit to continue deconstruction activities. On July 17, 2018 Ecology sent PPM a Recommendation for Enforcement Action. On July 18, 2018, Ecology sent PPM a Notice of Violation for vessel deconstruction without the correct NPDES permit. The Notice of Violation states that PPM violated Chapter 90.48.160 RCW (Water Pollution Control, waste disposal permit) and Chapter 173-226-020 WAC (Waste Discharge General Permit Program, permit required). Pursuant to RCW 90.48.120(1) PPM is required to file a full report with Ecology stating the steps that have been taken and the steps that are being taken to control such waste or pollution to otherwise comply with this determination of Ecology. PPM has failed and continued to fail to submit the required report to Ecology. PPM has continued to conduct deconstruction activities as recently as August 23, 2021, as documented by photographic evidence.

During vessel deconstruction activities, PPM discharges oil, grease, turbidity, TSS, pH, copper, zinc, lead, fuels and oil, spent abrasives, spent solvents, paint chips, various cleaners, and anti-corrosive compounds, scrap metal, slag, welding rods, wood, plastic, resins, glass fibers, miscellaneous trash, asbestos fibers, insulation, fire shields, gaskets, packing, lead from paint, polychlorinated biphenyls (PCBs) found in caulking, gaskets, paints, electrical cables, and various rubber and plastic products, and other materials removed from vessels being deconstructed in the Duwamish River in its stormwater and wastewater. These discharges from a vessel, which is a point source, violate the 33 U.S.C. § 1311(a) prohibition on unauthorized discharges and occurred each and every day over the past five years on which PPM conducted vessel deconstruction activities (which dates are known to PPPM) and are reasonably likely to continue to occur whenever these activities continue going forward. Additionally, these violations are ongoing because materials discharged to the Duwamish River remains in the river.

## X.      REQUEST FOR SWPPP

Pursuant to Condition S9.F of the 2015 Permit and Condition S9.G of the 2020 Permit, Soundkeeper Waterkeeper hereby requests that PPM provide a copy of, or access to, its SWPPP complete with all incorporated plans, monitoring reports, checklists, and training and inspection logs. The copy of the SWPPP and any other communications about this request should be directed to the undersigned at the letterhead address.

Should PPM fail to provide the requested complete copy of, or access to, its SWPPP as required by Condition S9.F of the 2015 Permit and Condition S9.G of the 2020 Permit, it will be in violation of that condition, which violation shall also be subject to this Notice of Intent to Sue and any ensuing lawsuit.

## XI.     CONCLUSION

The above-described violations reflect those indicated by the information currently available to Soundkeeper. These violations are ongoing. Soundkeeper intends to sue for all

violations, including those yet to be uncovered and those committed after the date of this Notice of Intent to Sue.

Under Sections 309(g)(2)(A) and 404(s)(4) of the CWA, 33 U.S.C. §§ 1319(d) and 1344(s)(4), each of the above-described violations subjects the violator to a penalty of up to $59,973 per day for each violation. In addition to civil penalties, Soundkeeper will seek injunctive relief to prevent further violations under Sections 505(a) and (d) of the CWA, 33 U.S.C. § 1365(a) and (d), and such other relief as is permitted by law. Also, Section 505(d) of the CWA, 33 U.S.C. § 1365(d), permits prevailing parties to recover costs, including attorney's fees.

Soundkeeper believes that this NOTICE OF INTENT TO SUE sufficiently states grounds for filing suit. We intend, at the close of the 60-day notice period, or shortly thereafter, to file a citizen suit against PPM under Section 505(a) of the Clean Water Act for violations.

During the 60-day notice period, we would be willing to discuss effective remedies for the violations addressed in this letter and settlement terms. If you wish to pursue such discussions in the absence of litigation, we suggest that you initiate those discussions within 10 days of receiving this notice so that a meeting can be arranged and so that negotiations may be completed promptly. We do not intend to delay the filing of a complaint if discussions are continuing when the notice period ends.

Sincerely,

**SMITH & LOWNEY, PLLC**

By: *s/Richard A. Smith*
Richard A. Smith
Savannah Rose


cc:    Michael Regan, Administrator, U.S. EPA
Michelle Pirzadeh, Acting Region 10 Administrator, U.S. EPA
Laura Watson, Director, Washington Department of Ecology
Fairchild Record Search, LTD. (PO Box 1368, Olympia, WA, 98507)
Harald L. Hurlen (PO Box 11578, Bainbridge Island, WA 98110)